**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP ROGERS, *et al.*, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-05497<br><br>Honorable Jorge L. Alonso |

---

**DEFENDANT AMAZON.COM, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(2) AND 12(b)(6) MOTION TO DISMISS**

---

## TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. THE COURT LACKS PERSONAL JURISDICTION OVER AMAZON. ........ 6

A. Plaintiffs' Claims Do Not Arise Out of Amazon's Illinois Contacts ........ 7

B. National Product Availability and Unrelated Illinois Operations Do Not Create Specific Jurisdiction. ........ 10

C. Plaintiffs Are Not Entitled to Fill the Jurisdictional Gap Through Discovery. ........ 11

II. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 8(a) BECAUSE PLAINTIFFS' LIABILITY THEORY IS ENTIRELY SPECULATIVE. ........ 13

III. PLAINTIFFS' BIPA CLAIMS FAIL. ........ 16

A. BIPA Does Not Apply Extraterritorially. ........ 16

B. Plaintiffs Plead Voice Audio or Recordings, Not BIPA Voiceprints. ........ 18

C. Individual BIPA Subsections Fail for Additional Reasons ........ 21

IV. PLAINTIFFS' IRPA CLAIMS FAILS ........ 22

A. Plaintiffs Fail to Plausibly Allege That Amazon Used Their Identity for a "Commercial Purpose" Under Section 30(a). ........ 22

B. Plaintiffs Fail to State a Section 30(b) or 30(d) "Digital Replica" Claim. ........ 23

V. PLAINTIFFS' ICFA CLAIM FAILS. ........ 24

VI. PLAINTIFFS' IUDTPA CLAIM FAILS. ........ 25

VII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS. ........ 27

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)....2, 16, 18

*B.D. v. Samsung SDI Co.*,
143 F.4th 757 (7th Cir. 2025)....10

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011)....6, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6, 13, 14, 16

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024)....*passim*

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
582 U.S. 255 (2017)....*10*

*Burris v. White*,
901 N.E.2d 895 (Ill. 2009)....19

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)....24

*CardioNet, Inc. v. LifeWatch Corp.*,
2008 WL 567031 (N.D. Ill. Feb. 27, 2008)....26

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022)....19, 20

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000)....12

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023)....18

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011)....15

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
887 F.3d 803 (7th Cir. 2018) ....................24

*Cooney v. Rossiter*,
583 F.3d 967 (7th Cir. 2009) ....................16

*D'Ambrosio v. Meta Platforms Inc.*,
176 F.4th 928 (7th Cir. 2026) ....................23

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (2009)....................15, 24

*G.T. by & through Hanlon v. Samsung Elecs. Am., Inc.*,
2026 WL 2279903 (7th Cir. Aug. 7, 2026)....................20

*G.T. v. Samsung Elecs. Am. Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ....................13, 18

*Gillam v. Abro Kalamazoo 3, Inc.*,
712 F. Supp. 3d 1079 (N.D. Ill. 2024) ....................12

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) ....................14

*Greenberg v. United Airlines*,
563 N.E.2d 1031 (Ill. 1990)....................26

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016) (Alonso, J.) ....................6, 11, 12

*Gutierrez v. Wemagine.AI LLP*,
2022 WL 252704 (N.D. Ill. Jan. 26, 2022)....................7, 8, 9, 11

*Hazlitt v. Apple Inc.*,
543 F. Supp. 3d 643 (S.D. Ill. 2021)....................21

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................6, 15

*Horn v. Method Prods., PBC*,
2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ....................21

*Huston v. Hearst Commc'ns, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ....................22

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020)....................24

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
965 F.3d 571 (7th Cir. 2020) ....................11

*Landau v. CNA Fin. Corp.*,
886 N.E.2d 405 (Ill. App. Ct. 2008) ....................17

*Lynch Ford, Inc. v. Ford Motor Co.*,
957 F. Supp. 142 (N.D. Ill. 1997) ....................26

*Martell v. X Corp.*,
2024 WL 3011353 (N.D. Ill. June 13, 2024) ....................9

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ....................6, 16

*McClaine v. DX Enters., Inc.*,
2024 WL 3860971 (S.D. Ill. Aug. 19, 2024) ....................22

*McGoveran v. Amazon Web Services Inc.*,
175 F.4th 434 (3d Cir. 2026) ....................8, 9, 17, 18

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ....................2, 9, 18, 19

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020) ....................7, 8, 9

*Mercis, B.V. v. Individuals Identified on Schedule A*,
2025 WL 540509 (N.D. Ill. Feb. 19, 2025) ....................26

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010) ....................5, 10

*In re Mosaic LLM Litig.*,
2025 WL 2402677 (N.D. Cal. 2025) ....................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................15

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................9, 19, 20

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2022) ....................25

*Speakers of Sport, Inc. v. ProServ, Inc.*,
178 F.3d 862 (7th Cir. 1999) ....................25

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) ..........14

*Svoboda v. Amazon.com Inc.*,
168 F.4th 956 (7th Cir. 2026) ..........16, 17, 18

*Taha v. Int'l Bhd. of Teamsters, Loc. 781*,
947 F.3d 464 (7th Cir. 2020) ..........13

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) ..........5

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ..........13

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ..........27

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
2024 IL 129183 ..........24, 25

*Vance v. Google LLC*,
2024 WL 1141007 (N.D. Cal. Mar. 15, 2024) ..........17

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) ..........18, 21

*Vanegas v. Signet Builders, Inc.*,
113 F.4th 718 (7th Cir. 2024) ..........10

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ..........27

*Walden v. Fiore*,
571 U.S. 277 (2014) ..........2, 5, 6, 9

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ..........18

**Statutes**

735 ILCS 5/2-209(c) ..........5

740 ILCS 14/, *et seq.* ..........*passim*

765 ILCS 1075/ ..........15, 22, 23, 24

815 ILCS 510/ ..........25, 26, 27

**Other Authorities**

*Congress*, National Recording Preservation Plan (https://www.loc.gov/programs/national-recording-preservation-plan/tools-and-resources/major-audio-collections-at-library-of-congress/) (last visited Aug. 17, 2026) ....................13

Public Access Op. No. 17-011, 2017 WL 10084298, at *3 ....................19, 20

Fed. R. Civ. P. 8(a) ....................13

Fed. R. Civ. P. 9(b) ....................6, 26

Fed. R. Civ. P. 12(b)(2) ....................1, 5, 12, 28

Fed. R. Civ. P. 12(b)(6) ....................1, 6, 28

# INTRODUCTION

This case suffers from a critical missing link and should be dismissed pursuant to both Rule 12(b)(2) and, in the alternative, Rule 12(b)(6). Plaintiffs rely on two allegations: (1) Amazon trained some voice-AI technologies using some publicly available voice recordings, and (2) Plaintiffs published recordings of their voices online. Resting on those two unrelated premises, the Complaint leaps "on information and belief" to the conclusion that Amazon located Plaintiffs' recordings among the vast universe of publicly available audio, copied them, extracted speaker-identifying voiceprints from them, encoded Plaintiffs' voiceprints in AI models, disseminated their voiceprints across Amazon affiliates and third parties, and used their voiceprints to generate outputs that mimic or compete with Plaintiffs. But the Complaint pleads no facts making that attenuated chain plausible, instead asking the Court to infer an entire sequence of events. Indeed, the Complaint identifies no dataset containing any Plaintiff, no ingestion event, no model-training run, no transfer of data to a vendor, and no AI-narrated audiobook, Alexa response, or Amazon product that sounds like—much less identifies—any of the six Plaintiffs. Plausibility requires much more.

The absence of factual allegations defeats both personal jurisdiction and every cause of action in the Complaint. Plaintiffs do not allege that the Court has general jurisdiction over Amazon (it doesn't). Instead, to plead specific jurisdiction, Plaintiffs rely on their own residence, Plaintiffs' creation of recordings in Illinois, the nationwide availability of Amazon products, and Amazon's ordinary commercial presence in Illinois. None of those allegations involve suit-related conduct by Amazon purposefully directed at Illinois. The conduct that matters—collecting recordings, extracting voiceprints, training models, storing model data, or disclosing biometric information—is not alleged to have occurred in Illinois or to have been aimed at Illinois. The

Supreme Court rejected that plaintiff-centered jurisdictional theory in *Walden v. Fiore*, 571 U.S. 277, 284 (2014), and this Court rejected the same theory in *Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727, at *6 (N.D. Ill. Aug. 6, 2024) (Alonso, J.), an AI-training BIPA case in which the plaintiff alleged that Illinois-origin photographs were swept into a public dataset.

Plaintiffs' BIPA claims also fail as a matter of law. BIPA does not apply extraterritorially, and Plaintiffs do not allege that any collection, extraction, analysis, training, storage, or dissemination of recordings occurred primarily and substantially in Illinois. *See Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E.2d 801, 852-53 (Ill. 2005). Moreover, Plaintiffs conflate voice recordings with voiceprints. BIPA does not regulate ordinary voice recordings. *See McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021). The voice audio files allegedly produced by Plaintiffs and collected by Amazon are not voiceprints. Nor does the Complaint plausibly allege that speech-synthesis training that incorporates voice audio involves the creation or storage of biometric data that can identify any Plaintiff. The Complaint quotes Amazon materials regarding entirely different technologies but does not plead facts showing that the challenged voice-synthesis training processes created BIPA voiceprints for these Plaintiffs. That distinction matters. Training AI to make synthetic speech sound natural is not the same as creating a speaker-identifying biometric template, especially because Amazon never created a model replicating Plaintiffs' voices.

The four non-BIPA claims also omit necessary elements. The Illinois Right of Publicity Act ("IRPA") requires public use or holding out of an individual's identity for a commercial purpose, or use of an unauthorized digital replica of an individual. Plaintiffs identify no Amazon output that an ordinary listener would recognize as any Plaintiff. The Illinois Consumer Fraud Act ("ICFA") requires a deceptive communication, intended reliance, proximate causation, actual

pecuniary loss, and, for non-consumers, a consumer nexus. Plaintiffs allege none of those elements. The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") requires likely confusion and prospective injury. Plaintiffs again identify no confusing output. Finally, unjust enrichment is not an independent tort in Illinois, as pleaded.

In sum, the Complaint should be dismissed in its entirety because the Court lacks jurisdiction over Amazon and all of Plaintiffs' claims fail as a matter of law.

## FACTUAL BACKGROUND

This case concerns what Plaintiffs call Amazon's "Foundational Voice Models," which are allegedly used to train Amazon's "Voice Products." Compl. ¶¶ 21-22, 61, 88-91. The defined Voice Products include nine technologies: Amazon Polly, Amazon Polly Brand Voice, Amazon Nova Sonic, Amazon Nova 2 Sonic, Audible AI Narration, ACX narrator voice replicas, KDP Virtual Voice, Alexa text-to-speech, and Alexa+. *Id.* ¶ 22. These Voice Products provide a variety of functions for businesses and consumers. Amazon Polly can convert written text to spoken audio for a variety of applications, while the related Amazon Polly Brand Voice service adds custom voice capabilities. *Id.* ¶¶ 22, 42. Amazon Nova Sonic and Nova 2 Sonic are "speech-to-speech" models that enable users to speak to AI systems and receive spoken responses. *Id.* Audible AI Narration, ACX narrator voice replicas, and KDP Virtual Voice are used to create audiobooks and, in the case of Audible AI Narration, to translate audiobooks. *Id.* Alexa text-to-speech is the technology Amazon's Echo smart speakers use to convert written text into spoken audio, while Alexa+ is an upgrade to the Echo smart speakers that is powered by generative AI. *Id.*

Plaintiffs are six Illinois residents who allege they created public voice recordings in journalism, podcasting, audiobook narration, and related voice work. Compl. ¶¶ 14-19, 88-109. Their recordings allegedly appear on broadcast archives, podcast platforms, audiobook platforms,

YouTube, and other public sources. *Id.* ¶¶ 53, 92-109. Plaintiffs allege that Amazon used recordings of their voices to train its Foundational Voice Models without their consent. *Id.* ¶ 2. They rely primarily on Amazon's public statements that certain AI models were trained using combinations of "public domain speech data," "publicly available," "licensed," "proprietary," and "open source" data; and Plaintiffs then allege, largely on information and belief, that their voice recordings were included within those datasets. *Id.* ¶¶ 8, 51, 89. The Complaint does not identify when, where, or how Amazon allegedly obtained any particular Plaintiff's voice, which recordings were purportedly used, which specific model or product was allegedly trained using any Plaintiff's voice, or any factual basis connecting a particular Plaintiff's recordings to any Amazon training dataset or Voice Product. Nor does the Complaint identify any Amazon-generated speech output that allegedly reproduces or is recognizable as any Plaintiff's voice. Instead, Plaintiffs' theory appears to be that, because their voices are "distinguished in their fields," *id.* ¶ 2, Amazon ***must*** have used their voices to train the Foundational Voice Models.

Plaintiffs go on to speculate that, as part of training its models, Amazon must have transformed Plaintiffs' regular voice recordings (which fall outside BIPA's scope) into BIPA-protected "voiceprints" capable of identifying the original speaker. Plaintiffs acknowledge that, to be a "voiceprint" under BIPA, a "digital fingerprint of the human voice" must "identif[y]" a specific speaker. Compl. ¶¶ 3-4. Plaintiffs never explain how the challenged Voice Products can identify them (or any other speaker for that matter), or why products that generate synthetic speech would need to do so. *See id.* ¶ 188. Plaintiffs do not, for example, allege that Amazon collected or

retained any unique speaker-identifying information in the process of training the Foundational Voice Models.

Plaintiffs claim that Amazon violated Sections 15(a)-(e) of BIPA through the training of its Voice Products. Compl. ¶¶ 144-181 (Counts I-V). Plaintiffs also allege that Amazon violated IRPA, ICFA, and IUDTPA by, among other things, using their identities for a commercial purpose without their consent; materially contributing to and facilitating the distribution of "unauthorized digital replicas" of their voices; and failing to make certain disclosures that Plaintiffs desire. *Id.* ¶¶ 182-204 (Counts VI-VIII). Finally, Plaintiffs bring an unjust enrichment claim under Illinois common law, theorizing that Amazon unjustly benefited at their expense through its alleged use of their "voice recordings, voiceprints, and identity attributes." *Id.* ¶¶ 205-212 (Count IX).

## LEGAL STANDARD

Under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See Brantley*, 2024 WL 3673727, at *6 (Alonso, J.). Illinois's long-arm statute permits jurisdiction to the full extent allowed by federal due process. *See* 735 ILCS 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Specific jurisdiction exists only when the defendant purposefully directed suit-related conduct at the forum and the plaintiff's claim arises out of or relates to that conduct. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). The minimum-contacts analysis looks to the defendant's forum contacts, not contacts created by the plaintiff or by third parties. *See Walden*, 571 U.S. at 284-85. Courts determine personal jurisdiction based on pleadings and other

materials submitted in connection with the motion, including declarations. *Brantley*, 2024 WL 3673727, at *6.

Rule 12(b)(6) requires a complaint to plead enough factual matter to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than facts merely consistent with liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded facts, but not legal conclusions, conclusory labels, or speculation. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "The court is not required to credit rank speculation." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020). Claims that sound in fraud, including ICFA and IUDTPA, must additionally meet the heightened pleading standard of Rule 9(b) and state the circumstances constituting fraud or mistake with particularity. *See* Fed. R. Civ. P. 9(b).

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER AMAZON.

Plaintiffs do not allege that Amazon is "at home" in Illinois. Nor could they: Amazon is incorporated in Delaware and headquartered in Washington. Compl. ¶ 20. Plaintiffs therefore rely on specific jurisdiction. *Id.* ¶ 28. Plaintiffs' arguments that they live in Illinois, created recordings in Illinois, or claim injury in Illinois are insufficient to establish jurisdiction over Amazon. *See Walden*, 571 U.S. at 284-85. Nor is it enough that Amazon conducts general business in Illinois or offers nationally available products that Illinois residents may use. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (Alonso, J.).

### A. Plaintiffs' Claims Do Not Arise Out of Amazon's Illinois Contacts.

Courts routinely dismiss BIPA claims where, as here, the alleged biometric conduct is untethered to Illinois. *See, e.g., Brantley*, 2024 WL 3673727, at *8; *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *2 (N.D. Ill. Jan. 26, 2022); *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020). Plaintiffs' claims arise from Amazon's alleged collection of public recordings, extraction of alleged biometric identifiers, training and operation of AI models, and dissemination or monetization of alleged biometric data. Compl. ¶¶ 1, 33, 45-61, 74-79, 148, 162, 168, 176. Plaintiffs do not allege that Amazon performed any of those acts in Illinois. They allege instead that Plaintiffs' voices were recorded or produced in Illinois and that some public platforms displayed information identifying Plaintiffs as Illinois speakers. *Id.* ¶¶ 63-66. That is not purposeful direction by Amazon toward Illinois; it is Plaintiffs' own forum conduct and third-party publication on the internet. *See, e.g., Brantley*, 2024 WL 3673727, at *7 (plaintiff's conduct uploading photos from Illinois, allegedly used in defendant's AI training data, did not establish defendant's conduct "was purposely directed at Illinois").

Amazon's declarations establish that all suit-related conduct occurs outside of Illinois. Personnel and technological infrastructure supporting the training and development of generative voice models for the Voice Products and Foundational Voice Models are located outside of Illinois. Declaration of Trevor Wood ("Wood Decl.") ¶¶ 5-6, Declaration of Brian Levine ("Levine Decl.") ¶¶ 4-5. Relevant Amazon servers are likewise not located in Illinois, and Amazon does not collect, extract, train, or store data used to support generative voice models in Illinois, or target Illinois sources for data. *See* Wood Decl. ¶¶ 6-7, Levine Decl. ¶¶ 5-7.

This Court has already rejected an analogous jurisdictional theory that rests solely on a plaintiff's connection to Illinois and a defendant's use of public data to train and develop AI. In

*Brantley*, the plaintiff alleged that an AI developer trained its models on publicly available images, including photographs the plaintiff uploaded from Illinois to websites that may have been scraped into a training dataset. 2024 WL 3673727, at *4-7. The Court held that the plaintiff's Illinois residence, Illinois uploads, and alleged lack of consent in Illinois were insufficient because "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at *7. The same is true here. Plaintiffs allege only that they uploaded recordings while in Illinois; they identify no suit-related Amazon conduct occurring in or directed at Illinois. Compl. ¶¶ 63-64.

*Gutierrez* reached the same conclusion. There, the plaintiff alleged that an AI application extracted facial biometrics from photographs uploaded by Illinois users and argued that the defendant purposefully targeted Illinois because thousands of Illinois residents used the app. 2022 WL 252704, at *1-2. The court nevertheless held that Illinois residents' use of the application did not establish that the defendant's suit-related conduct was directed at Illinois. *Id.* at *2.

*McGoveran* is even more instructive. There, Illinois residents brought BIPA claims against Amazon Web Services ("AWS"), alleging that Amazon Connect collected their voiceprints. 488 F. Supp. 3d at 716. The court held that it lacked specific personal jurisdiction because the only alleged Illinois contacts were the plaintiffs' own use of the service—not suit-related conduct by Amazon purposefully directed at Illinois. *See id*. at 721-23. Plaintiffs' jurisdictional theory here is weaker still. Unlike the plaintiffs in *McGoveran*, Plaintiffs do not even allege a direct contact between Plaintiffs and Amazon's Voice Products, much less that Amazon collected Plaintiffs' recordings in Illinois. Instead, they speculate that Amazon obtained their voices through unidentified third parties or publicly available sources and later used those recordings to train AI models. *See* Compl. ¶ 8. Those allegations provide even less basis for concluding that Plaintiffs' claims arise out of Amazon's suit-related contacts with Illinois.

Labeling Plaintiffs' recordings as "Illinois-origin" cannot establish personal jurisdiction. *See* Compl. ¶¶ 63-64. An out-of-state company's alleged processing of publicly available data outside Illinois does not become Illinois conduct merely because the recordings were created by Illinois residents. That is precisely the plaintiff-centered theory rejected in *Walden*. 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). As illustrated by *Brantley*, *Gutierrez*, and *McGoveran*, the relevant inquiry is Amazon's own suit-related contacts with Illinois, not derivative contacts that exist only because Plaintiffs reside here or allegedly created recordings here. *See Brantley*¸ 2024 WL 3673727, at *7; *Gutierrez*, 2022 WL 252704, at *2; *McGoveran*, 488 F. Supp. 3d at 721-23.

The distinction is especially important in biometric cases. A BIPA claim does not arise from the mere existence of a person's face, fingerprint, voice, or photograph. Rather, it arises from a private entity's alleged collection, possession, or disclosure of a biometric identifier or biometric information. *See Rivera v. Google Inc.,* 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (holding that "a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person"); *Martell v. X Corp*., 2024 WL 3011353, at *4 (N.D. Ill. June 13, 2024) (dismissing BIPA claims predicated on the collection of a photograph rather than "a biology-based set of measurements ('biometric') that can be used to identify a person ('identifier')"). Plaintiffs therefore must connect Amazon's alleged collection, possession, or use of Plaintiffs' purported voiceprints—or other biometric information—to suit-related conduct purposefully directed at Illinois. *See McGoveran*, 2021 WL 4502089, at *4 (allegations that defendant "'intercepted biometric information' from Illinois callers" did not establish plaintiffs' "'voiceprints' were

created, possessed or stored … in Illinois"). They do not. Instead, Plaintiffs rely on the fact that some Plaintiffs resided in Illinois or allegedly recorded audio here, without alleging that Amazon collected any Plaintiff's biometric information in Illinois or otherwise engaged in the conduct giving rise to their claims in Illinois. Accepting Plaintiffs' theory would mean that any state in which a public speaker happened to record audio could exercise personal jurisdiction over any out-of-state AI developer alleged to have later obtained and used the recording for model training. Due process does not permit such an expansive theory of specific jurisdiction. *See Vanegas v. Signet Builders, Inc*., 113 F.4th 718, 723 (7th Cir. 2024) (rejecting expansion of specific jurisdiction that "resembles a loose and spurious form of general jurisdiction" because the "due process guarantee sets a higher bar.")

**B. National Product Availability and Unrelated Illinois Operations Do Not Create Specific Jurisdiction.**

Amazon's general Illinois commercial presence—the Amazon websites, AWS services, Audible, Kindle, fulfillment centers, delivery stations, grocery stores, and other operations—is insufficient to establish specific jurisdiction. *See* Compl. ¶¶ 29-32, 44, 67; *see also B.D. v. Samsung SDI Co*., 143 F.4th 757, 774 (7th Cir. 2025) ("a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity" (*quoting Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017))). That commercial presence is not suit-related and has nothing to do with alleged out-of-state acquisition and model training involving voice recordings. Specific jurisdiction is claim-specific and cannot be applied through unrelated forum contacts. *See Mobile Anesthesiologists*, 623 F.3d at 444.

Nor does the nationwide availability of Amazon's products show Amazon targeted Illinois. Plaintiffs note that Amazon's products are available nationwide and its alleged training practices

were broad, but none of those allegations are Illinois-specific. In *be2*, the Seventh Circuit held that an interactive website accessible in the forum does not by itself establish purposeful direction; the defendant must ***target*** the forum market. 642 F.3d at 558-59. *Gullen* applied the same principle to BIPA, finding no Illinois targeting in connection with facial-recognition technology on photos, some of which happen to include Illinois residents, because the challenged conduct applied generally to all users, not specifically to Illinois. 2016 WL 245910, at *2.

Plaintiffs' downstream monetization theory (Compl. ¶¶ 35, 37) is equally insufficient to establish jurisdiction. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571 (7th Cir. 2020) (holding that downstream sales to Illinois consumers had only an "attenuated relationship" to the plaintiff's claims, and downstream sales did not subject the defendants to specific jurisdiction in Illinois). Although the Complaint alleges Illinois customers may use Voice Products powered by models allegedly trained on Plaintiffs' data, Compl. ¶¶ 35, 67, it nowhere alleges any Illinois transaction by Amazon that involved Plaintiffs, used Plaintiffs' voices, disclosed Plaintiffs' biometric data, or caused likely confusion about Plaintiffs. The use of nationally-available products in Illinois is irrelevant. *See, e.g., Gutierrez*, 2022 WL 252704, at *2 (holding no personal jurisdiction over defendants in a BIPA action challenging AI training practices, notwithstanding allegations that more than 5,000 Illinois residents used the defendants' app). That is not suit-related conduct purposefully directed at Illinois and does not cure the missing nexus between the forum and the alleged collection and training conduct. *See id*.

### C. Plaintiffs Are Not Entitled to Fill the Jurisdictional Gap Through Discovery.

The jurisdictional defect is apparent on the face of the Complaint, and discovery cannot cure it. Plaintiffs identify no suit-related Amazon act in Illinois and no Illinois-targeted collection, extraction, training, storage, sale, or dissemination of any Plaintiff-specific biometric data, and

they never could. *See* Wood Decl. ¶¶ 5-6, Levine Decl. ¶¶ 4-5. Jurisdictional discovery is not a device for searching for a forum nexus after filing suit; a plaintiff must first make a colorable or prima facie showing of personal jurisdiction. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). In *Brantley*, the court denied jurisdictional discovery on materially similar allegations of plaintiff's Illinois residence, plaintiff's Illinois uploads, and nationwide marketing. 2024 WL 3673727, at *7. The same result follows here. Plaintiffs may not plead forum conduct based on unrelated activities as a vehicle to obtain jurisdictional discovery. *See id*. This action should be dismissed under Rule 12(b)(2) without leave to conduct discovery.

The personal jurisdiction defect also applies to the non-BIPA counts. *See Gillam v. Abro Kalamazoo 3, Inc.*, 712 F. Supp. 3d 1079, 1084 (N.D. Ill. 2024) (holding "there must be personal jurisdiction over defendant as to each claim when considered separately.") Plaintiffs' IRPA, ICFA, IUDTPA, and unjust-enrichment theories all arise from the exact same alleged conduct: Amazon supposedly used Plaintiffs' recordings and identities to train and monetize voice products. Compl. ¶¶ 186, 195, 202, 209. Plaintiffs plead no Amazon act in Illinois that used any Plaintiff's identity, made any deceptive statement to any Illinois Plaintiff, caused any likely confusion about any Plaintiff in Illinois, or unjustly obtained a benefit from any Plaintiff in Illinois. A general Illinois marketplace for Amazon products cannot create claim-specific jurisdiction over claims based on out-of-state model development. *See Gullen*, 2016 WL 245910, at *2 (rejecting defendants' "sales, marketing, or other business activity in Illinois" as a basis for specific jurisdiction in a suit arising from "alleged collection of biometric data from a photo.")

## II. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 8(a) BECAUSE PLAINTIFFS' LIABILITY THEORY IS ENTIRELY SPECULATIVE.

Even if the Court had personal jurisdiction, the Complaint should be dismissed because every count depends on the same speculation: that Amazon used these Plaintiffs' voice recordings. *See G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 795 n.5 (N.D. Ill. 2024) (dismissing allegations of biometric collection as "impermissibly speculative"). Plaintiffs merely allege that Amazon trained some technologies on large speech corpora and that Plaintiffs' recordings were publicly available. Compl. ¶¶ 51-53, 88-109. But the global supply of publicly available audio recordings is vast.[1] The mere existence of Plaintiffs' public recordings does not make it plausible that those recordings were among the subset of publicly available recordings Amazon selected, copied, ingested, analyzed, or used. Possibility is not plausibility. *Twombly*, 550 U.S. at 557.

Rule 8(a)(2) requires that a complaint "include facts showing a plausible—not merely 'conceivable'—entitlement to relief." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) (explaining "what is plausible has a moderately high likelihood of occurring" and "[t]he fact that the allegations undergirding a claim could be true" is insufficient to state a claim). The missing allegations are concrete and fundamental. Plaintiffs do not identify a single Rogers broadcast, Marin segment, Amer podcast episode, Dorcus audiobook, Lacour interview, or Nassif narration that Amazon allegedly used. They do not allege that any Plaintiff's recordings appear in a dataset known to have been used by Amazon. They identify no source URL, training manifest, model card, vendor, licensing agreement, Amazon document, employee, or witness connecting any

---

[1] As just one example of a publicly available audio recording set that exists, the Library of Congress retains approximately 3.5 million audio recordings. *See* Library of Congress, *Major Audio Collections at the Library of Congress*, National Recording Preservation Plan (https://www.loc.gov/programs/national-recording-preservation-plan/tools-and-resources/major-audio-collections-at-library-of-congress/) (last visited Aug. 17, 2026).

Plaintiff's recordings to the challenged models. Nor do Plaintiffs identify AI-generated output resembling any Plaintiff's voice or any third party who allegedly received or used a voiceprint derived from Plaintiffs' recordings. The Complaint lacks plausible allegations "that any of [plaintiffs'] works were included in training datasets used to develop these models." *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 914 (N.D. Cal. 2025) (dismissing copyright claims based on AI training sets); *see also In re Mosaic LLM Litig.*, 2025 WL 2402677, at *2 (N.D. Cal. 2025) (dismissing copyright claim as speculative absent facts showing the models trained on plaintiffs' works). In short, Plaintiffs plead only that Amazon ***could have*** used their recordings and are suing to determine whether Amazon did.

That is far from plausible pleading. The existence of publicly available recordings makes Plaintiffs' theory conceivable, but it does not make it plausible. *See Twombly*, 550 U.S. at 570. As this Court explained in *Brantley*, allegations that publicly available content may have been incorporated into an AI training dataset do not plausibly establish that a particular plaintiff's content ***was included***. 2024 WL 3673727, at *6. The same principle applies here. Plaintiffs' recordings may have been publicly available, but the Complaint alleges no facts connecting their recordings to Amazon's data training process.

Speculation does not bridge that gap. As the court explained in *Strautins,* it is not enough to assume that because a defendant possessed a large universe of data, a particular plaintiff's information must have been among it. Such an allegation is "a conclusion in need of factual support." *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880 (N.D. Ill. 2014). Plaintiffs make the same unsupported leap here, assuming that because Amazon allegedly trained models using some publicly available audio, it necessarily used their recordings.

Likewise, information-and-belief allegations cannot substitute for well-pleaded facts. *Heard* rejected precisely this type of pleading, holding that courts need not credit speculation unsupported by factual allegations showing the defendant engaged in the challenged conduct. 440 F. Supp. 3d at 969. The Complaint here simply recites BIPA's statutory verbs—collection, possession, disclosure, profit, and retention—without alleging facts showing that Amazon performed any of those acts with respect to any Plaintiff.

The Seventh Circuit has repeatedly held that pleading "on information and belief" does not itself make allegations plausible. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 443 (7th Cir. 2011). Yet that is all Plaintiffs offer. They do not allege that any specific public dataset used by Amazon contains their recordings; that any Amazon document, employee, customer, or public source identified their recordings as training data; or that any model output reproduces their voices. Instead, they ask the Court to infer inclusion from the sheer size of AI training datasets. But scale cannot substitute for facts.

All of Plaintiffs' legal claims fail because Plaintiffs never plausibly allege that Amazon used their voice recordings. BIPA requires the collection or possession of Plaintiffs' biometric identifiers or biometric information. *See* 740 ILCS 14/15. IRPA requires the use of Plaintiffs' identities or digital replicas. *See* 765 ILCS 1075/30(a). ICFA and IUDTPA require deceptive or misleading conduct affecting these Plaintiffs. *See De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (2009). Unjust enrichment requires a benefit obtained at Plaintiffs' expense. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011). Each theory depends on the same missing factual premise—that Amazon used Plaintiffs' recordings. The Complaint never plausibly alleges that foundational fact.

The fact that Amazon possesses information about its own training datasets does not permit Plaintiffs to speculate about their contents and then seek discovery to determine whether their speculation is correct. *See McCauley*, 671 F.3d at 619-20 (granting dismissal and finding plaintiff was not entitled to early discovery "on the chance [plaintiff] might unearth a basis for a claim.") *Twombly* rejected precisely that approach, explaining that a plaintiff may not proceed to discovery based on allegations that fall short of plausibility simply because the defendant possesses relevant information. 550 U.S. at 558-59. As this Court likewise recognized in *Brantley*, speculation that publicly available content may have been incorporated in an AI training dataset is not enough to state a plausible claim. Discovery follows a plausibly pleaded claim; it is not how Plaintiffs may search for one. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (holding "before defendants in such a case become entangled in discovery proceedings, the plaintiff must meet a high standard of plausibility.")

## III. PLAINTIFFS' BIPA CLAIMS FAIL.

Plaintiffs' BIPA claims (Counts I through V) should be dismissed for at least three independent reasons. First, BIPA does not apply extraterritorially, and the Complaint does not plead that the relevant conduct occurred primarily and substantially in Illinois. Second, the Complaint alleges the use of voice recordings to train speech-synthesis models, not the collection, possession, or disclosure of BIPA-covered voiceprints or other biometric information used to identify Plaintiffs. Third, several of Plaintiffs' claims fail because they do not satisfy the statutory requirements of the specific BIPA subsections they invoke.

### A. BIPA Does Not Apply Extraterritorially.

Illinois statutes have no extraterritorial effect unless the legislature clearly provides otherwise. *See Avery*, 835 N.E.2d at 852-53. BIPA contains no such provision. *See Svoboda v.*

*Amazon.com Inc.*, 168 F.4th 956, 959 (7th Cir. 2026). Accordingly, a BIPA claim must arise from conduct occurring "primarily and substantially" in Illinois. *Id.*; *see also Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. Ct. 2008).

The Complaint does not satisfy that standard. BIPA regulates a private entity's collection, possession, disclosure, sale, and protection of biometric identifiers and biometric information. 740 ILCS 14/15(a)-(e). Yet Plaintiffs allege only that they reside in Illinois, recorded audio in Illinois, and felt injury in Illinois. Compl. ¶¶ 62-70. They do not allege that Amazon collected, possessed, extracted, stored, disclosed, sold, transmitted, or otherwise handled any alleged biometric identifier in Illinois.

This omission is dispositive. Courts applying BIPA consistently focus on ***where the defendant engaged in the challenged biometric-related conduct—not where the plaintiff resided or happened to create the underlying recording.*** For example, *McGoveran v. Amazon Web Services Inc.* held that BIPA did not apply because Amazon's alleged handling of biometric data occurred outside Illinois, notwithstanding the plaintiffs' Illinois connections. 175 F.4th 434, 442 (3d Cir. 2026). Likewise, *Vance v. Google LLC*, 2024 WL 1141007 (N.D. Cal. Mar. 15, 2024), rejected BIPA claims challenging AI model training where the complaint failed to allege that the defendant processed or used biometric data in Illinois. *Id.*, at *3.

Unable to allege any Illinois conduct by Amazon, Plaintiffs instead attempt to relocate the alleged BIPA violation by asserting that their recordings were "generated" in Illinois because they spoke and recorded them here. Compl. ¶¶ 62-64. But BIPA does not regulate where a person speaks or records audio; it regulates where and how a private entity allegedly collects, possesses, discloses, or otherwise handles biometric identifiers and biometric information. *See McGoveran*,

175 F.4th at 442. Plaintiffs' location cannot transform Amazon's alleged out-of-state conduct into Illinois conduct. *Id*.

Nor can Plaintiffs rely on Amazon's Illinois sales. BIPA Section 15(c) concerns the sale, lease, trade, or profit from biometric data itself—not the downstream sale of products or services allegedly developed from using such data. *See Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021) (holding 15(c) only regulates transactions where "access to biometric data is shared or given to another"). Plaintiffs do not allege that Amazon sold, disclosed, or otherwise transferred any Plaintiff's alleged biometric identifiers in Illinois, or that Plaintiffs' identifiers could somehow be extracted by the end-users of the Voice Products. Accepting Plaintiffs' theory would mean that every nationwide sale of an AI product could give rise to a BIPA claim in Illinois, effectively eliminating the "primarily and substantially" limitation recognized in *Avery* and *Svoboda*. *See Vance*, 534 F. Supp. 3d at 1308-09 (rejecting construction of BIPA that would prohibit sale of products developed using biometric data); *see also Svoboda*, 168 F.4th at 959 (recognizing "any statutory violation [of BIPA] must occur in Illinois to warrant relief."). BIPA does not permit that result.

**B. Plaintiffs Plead Voice Audio or Recordings, Not BIPA Voiceprints.**

"[V]oice audio is not the same as a voiceprint, and voice audio does not meet the definition of 'biometric identifier' or 'biometric information' under BIPA." *See McGoveran*, 2021 WL 4502089, at *4. BIPA only covers biometric data that is "capable of identifying an individual" and the technology must "connect the biometrics to an individual." *G.T.*, 742 F. Supp. 3d at 800; *see also Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1125-26 (9th Cir. 2024) (dismissing BIPA claims because technology could not "identify a person"); *Clarke v. Aveda Corp.*, 704 F. Supp. 3d

863, 866 (N.D. Ill. 2023) (dismissing BIPA claims because plaintiffs "provide no allegations demonstrating Aveda was capable of identifying them from this data").[2]

Plaintiffs allege that Amazon used recordings to train models to generate realistic speech. Compl. ¶¶ 45-49, 51. They do not allege facts showing that Amazon created a Plaintiff-specific identifier that can identify any Plaintiff. Allegations that a model may learn vocal characteristics such as timbre, pitch, cadence, phrasing, or expression do not constitute the collection of a biometric identifier. *See Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022) (holding that "characteristics like pitch, volume, duration, accent and speech pattern . . . are not biometric identifiers or voiceprints" because they cannot uniquely identify individuals). Those features may help a model generate natural-sounding speech; they do not show a stored biometric template that can be used to identify Rogers, Marin, Amer, Dorcus, Lacour, or Nassif.

That is the statutory distinction Plaintiffs erase. BIPA was enacted to protect biometric identifiers that are biologically unique and immutable, not every recording containing a person's voice. 740 ILCS 14/5(c). Courts applying BIPA have repeatedly recognized that distinction. *See, e.g., Carpenter*, 580 F. Supp. 3d at 517; *McGoveran*, 2021 WL 4502089, at *4. Plaintiffs therefore must allege facts showing that Amazon created, collected, or possessed an identifying biometric representation of their voices. Alleging only the collection of source media, followed by the conclusory assertion that a biometric identifier must have been created, is not enough. *See Rivera*, 238 F. Supp. 3d at 1097 (noting that "record[ing] a person's voice without generating a voiceprint" is "no violation of the Act."). Plaintiffs effectively ask the Court to rewrite BIPA. The legislature

---

[2] The Illinois Attorney General, whose views on BIPA's meaning are entitled to deference under Illinois interpretive principles, *see Burris v. White*, 901 N.E.2d 895, 899 (Ill. 2009), agrees. The AG has recognized that someone "who records a person's voice" without applying technology to "generat[e]" different data that can be used for identification has not collected "biometric" data subject to BIPA. *See* Public Access Op. No. 17-011, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017).

chose the narrower term "voiceprint" rather than "voice recording," "audio file," or "sound recording." *See* Public Access Op. No. 17-011, 2017 WL 10084298, at *3 (stating "a voiceprint, which is a record of mechanical measurement, is not the same as a simple recording of a voice"); *Carpenter*, 580 F. Supp. 3d at 515 (same). Courts must give that choice effect. A voiceprint connotes an identifying print or template derived from voice characteristics; a recording is merely the raw medium from which many things might be done, including transcription, playback, editing, archiving, or speech synthesis. *See Rivera*, 238 F. Supp. 3d at 1096 ("a 'biometric identifier' is not the underlying medium itself . . . but instead is a set of measurements of a specified physical component"); *see also G.T. by & through Hanlon v. Samsung Elecs. Am., Inc.*, 2026 WL 2279903, at *5-6 (7th Cir. Aug. 7, 2026) (distinguishing the collection of photographs from the collection of facial biometric data derived from the same photographs for purposes of BIPA liability). Plaintiffs allege, at most, that Amazon's voice models may have learned from Plaintiffs' raw audio. They do not plausibly allege the creation of a voiceprint capable of identifying them.

Plaintiffs' reliance on documents concerning Amazon Connect Voice ID and Chime SDK confirms the defect rather than curing it. Compl. ¶¶ 48, 115-118. Those are different technologies not at issue here and are designed for the ***purpose*** of identifying and authenticating human speakers. By contrast, the Voice Products are each designed to generate speech audio for computer systems and media. Compl. ¶¶ 22, 42. Plaintiffs do not allege that they used Amazon Connect Voice ID or Chime SDK. The Complaint pleads no facts showing that Amazon Polly, Nova Sonic, Audible AI Narration, ACX voice replicas, KDP Virtual Voice, Alexa text-to-speech, or Alexa+ store or use a Plaintiff-identifying voiceprint merely because they allegedly were trained using voice audio and generate synthetic speech. Plaintiffs must plead facts showing that the alleged data identifies them. They do not, nor do they plead that any resulting synthesized voice generated by

the models sounds anything like them. Instead, they merely plead source recording and model training. That is not enough under BIPA.

### C. Individual BIPA Subsections Fail for Additional Reasons.

Because Plaintiffs do not plausibly plead Illinois conduct or BIPA-covered biometric data, all five BIPA counts fail. Several counts also fail for other independent reasons:

**Section 15(c).** Section 15(c) provides that no private entity in possession of biometric data may "sell, lease, trade, or otherwise profit from" it. 740 ILCS 14/15(c). Courts read "otherwise profit from" in context with "sell," "lease," and "trade" to require a transaction involving access to biometric data in exchange for value. *See Vance*, 534 F. Supp. 3d at 1306-07; *see also Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021) (using biometric technology to sell products is not itself a Section 15(c) sale of biometric data). Plaintiffs do not allege a sale, lease, trade, or transfer of any Plaintiff's biometric data for value. They allege that Amazon sells voice products whose capabilities allegedly benefited from training data, not the underlying data itself. Compl. ¶¶ 161-62. That is not a Section 15(c) transaction.

**Section 15(d).** Section 15(d) prohibits disclosure, redisclosure, or dissemination of biometric data. 740 ILCS 14/15(d). The Complaint does not identify any Plaintiff-specific biometric data that Amazon disclosed to anyone. Plaintiffs allege, in broad strokes, that model parameters were transmitted among affiliates, vendors, subprocessors, and integration partners. Compl. ¶¶ 74-79, 168-69. But they do not plead facts showing that those parameters contain any Plaintiff's biometric identifier or that any third party received any Plaintiff's biometric data. Threadbare allegations of disclosure do not state a Section 15(d) claim. *See Horn v. Method Prods., PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022).

**Section 15(e).** Section 15(e) requires protecting biometric data from unauthorized disclosure. 740 ILCS 14/15(e). Plaintiffs plead no facts about security controls for any alleged biometric data, no data breach, and no deficient safeguards. Compl. ¶¶ 174-79. The assertion that Amazon protects "what it values" better than "what it took" is rhetoric, not a factual allegation. *See McClaine v. DX Enters., Inc.*, 2024 WL 3860971, at *4 (S.D. Ill. Aug. 19, 2024) (dismissing a 15(e) claim that recited the statutory language absent any factual allegations regarding the defendants' storage and security practices for biometric data).

## IV. PLAINTIFFS' IRPA CLAIMS FAILS.

### A. Plaintiffs Fail to Plausibly Allege That Amazon Used Their Identity for a "Commercial Purpose" Under Section 30(a).

Section 30 of IRPA prohibits use of an individual's "identity" for a "commercial purpose" during their lifetime without prior written consent. *See* 765 ILCS 1075/30(a). "Identity" means an attribute that serves to identify the individual to an ordinary, reasonable viewer or listener, and "commercial purpose" means public use or holding out of that identity in connection with offering, selling, advertising, promotion, or fundraising. 765 ILCS 1075/5. IRPA is only implicated where an individual's identity is specifically held out for a sale. *See Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022) ("[i]t is not enough for [a plaintiff's] name and other information to appear on or within a product," his "identity must help sell something").

Plaintiffs do not allege the type of public use of identity that IRPA prohibits. *See id.* They identify no Amazon advertisement, product page, audiobook, Alexa response, Polly output, Nova Sonic output, or other recording in which Amazon publicly used or held out any Plaintiff's voice to promote or sell a product. Instead, they allege that Amazon may have used their recordings as training inputs before marketing AI products capable of generating human-sounding speech. Compl. ¶¶ 186–88. Even if that were true, that is not a commercial use of Plaintiffs' identities. *See*

765 ILCS 1075/5 (defining "commercial purpose"); *D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 935-36 (7th Cir. 2026) (recognizing that "commercial purpose" is narrowly limited under the statute and declining to expand it to a "free-floating profit motive"). Accepting Plaintiffs' theory would transform IRPA from a right-of-publicity statute into a general AI training-data statute.

### B. Plaintiffs Fail to State a Section 30(b) or 30(d) "Digital Replica" Claim.

Plaintiffs' IRPA digital-replica theory fails for the same reason. IRPA Sections 30(b) and (d) prohibit the unauthorized use of a person's digital replica, but only where the defendant creates or uses a digital replica of that individual, with "actual knowledge" of doing so. 765 ILCS 1075/30(b), (d). Plaintiffs identify no Amazon-generated recording that replicates Rogers, Marin, Amer, Dorcus, Lacour, or Nassif. A synthetic voice capable of sounding generally human is not a digital replica of every person whose publicly available recordings might have contributed to model training. *See D'Ambrosio*, 176 F.4th at 935 n.2.

Plaintiffs' factual omissions are dispositive and fatal because IRPA protects a voice only when it functions as an identifier—that is, when an ordinary, reasonable listener would recognize the voice as that of the plaintiff. 765 ILCS 1075/5. Plaintiffs do not allege that any Amazon output sounded like them, that any listener identified an Amazon-generated voice as theirs, or that Amazon represented any output as using their voices. At most, they speculate that their recordings contributed to the development of products whose outputs bear no recognizable resemblance to them. That is not the use of Plaintiffs' identities.

Plaintiffs' failure to plead facts supporting actual knowledge is independently fatal to their "digital replica" theory of IRPA liability. A digital replica claim may only be maintained where a defendant allegedly distributes "a sound recording or audiovisual work with ***actual knowledge*** that the work contains an unauthorized digital replica." 765 ILCS 1075/30(b) (emphasis added). "[T]o

have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020). Plaintiffs fail to allege that Amazon was aware that any particular sound recording or output contained an unauthorized digital replica of any named Plaintiff's voice and distributed that replica to the general public or facilitated that distribution. 765 ILCS 1075(30)(b), (d). Accordingly, the digital replica claims fail for lack of alleged actual knowledge.

## V. PLAINTIFFS' ICFA CLAIM FAILS.

A deceptive practices ICFA claim requires a deceptive act or practice, intent that the plaintiff rely on the deception, occurrence in trade or commerce, actual damage, and proximate cause. *See Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 26. A plaintiff cannot maintain an ICFA claim based on a communication the plaintiff never received, directly or indirectly. *See De Bouse v. Bayer AG*, 922 N.E.2d at 316. And when a plaintiff is not a consumer in the challenged transaction, the conduct must implicate consumer-protection concerns through a consumer nexus. *See Tri-Plex*, 2024 IL 129183, ¶¶ 34-38; *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 822-23 (7th Cir. 2018).

Plaintiffs identify no deceptive communication they received, saw, or relied upon. They cite AWS terms and other customer-facing materials. Compl. ¶¶ 116-24, 197. But they do not allege that any Plaintiff was an AWS customer, reviewed those materials, or relied on them. Their alternative theory—"opacity" about training-data sources—is not an actionable deceptive statement to Plaintiffs. Silence in materials that were never communicated to Plaintiffs cannot satisfy ICFA. *De Bouse*, 922 N.E.2d at 316. This falls far short of the 9(b) pleading standard required to allege conduct sounding in fraud. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (holding that ICFA claims are subject to 9(b) pleading requirements).

The consumer-nexus problem is equally fatal. Plaintiffs do not sue as purchasers or users of the challenged Voice Products. They sue as voice professionals who claim Amazon used their recordings without permission. Compl. ¶¶ 80-91, 192-98. That alleged injury, if it existed, would concern licensing, publicity, and biometric statutes—not consumer fraud. The proposed class is defined by people whose recordings were produced or recorded in Illinois, not by consumers deceived in a transaction with Amazon. *Id.* ¶ 129. Plaintiffs also plead no actual pecuniary loss proximately caused by deceptive communication. *See Tri-Plex Tech. Servs.*, 2024 IL 129183, ¶ 26 (holding that an ICFA claim requires deception of the plaintiff and "actual damages to the plaintiff [] proximately caused by the deception").

The unfairness prong does not rescue the ICFA claim. Plaintiffs invoke BIPA and IRPA as reflections of public policy, but ICFA requires more than the repackaging of another statutory theory. Plaintiffs must plead substantial consumer injury that is not outweighed by countervailing benefits and that consumers could not reasonably avoid. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2022). The alleged injury here is not a consumer injury at all. It is the asserted deprivation of public speakers' consent, licensing value, and professional market opportunities. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999) (alleged loss of professional opportunities lacked the consumer nexus necessary to support an ICFA claim). Those theories rise or fall under the statutes directed to biometric privacy and publicity rights. They do not become consumer fraud because Plaintiffs relabel them as unfair. In summary, Plaintiffs fail to state a claim under either the "unfair" or "deceptive" prong of ICFA.

## VI. PLAINTIFFS' IUDTPA CLAIM FAILS.

IUDTPA prohibits conduct likely to cause confusion about source, sponsorship, approval, affiliation, connection, or association. 815 ILCS 510/2(a)(2)-(3). It authorizes injunctive relief for

a person likely to be damaged. 815 ILCS 510/3. Plaintiffs therefore must plead facts showing likely confusion and a likelihood of future harm, based on an affirmative statement by the Defendant. Conclusory recitation of the statute is not enough. *See Greenberg v. United Airlines*, 563 N.E.2d 1031, 1037 (Ill. 1990); *Mercis, B.V. v. Individuals Identified on Schedule A*, 2025 WL 540509, at *5 (N.D. Ill. Feb. 19, 2025).

The Complaint pleads neither confusion nor likely harm. Plaintiffs do not identify a single AI-generated voice output that sounds like any Plaintiff, that was attributed to any Plaintiff, or that would cause a listener to believe that any Plaintiff sponsored, approved, or was affiliated with Amazon. Compl. ¶¶ 201-04. The allegation that Amazon products can generate human-sounding voices does not support likely confusion about these Plaintiffs. Nor do Plaintiffs plead an imminent future output that will confuse listeners.

Plaintiffs also impermissibly base their IUDTPA claim on an omission rather than an affirmative statement. Compl. ¶ 89 (relying on the "absence of disclosures"). "Implicit (if not explicit) within" the IUDTPA "is that for a violation to occur, the defendant must make some form of a representation (or do something) to the public (or a potential buyer) regarding a good or service." *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997). Where there "is no alleged representation by [the defendant] to anyone concerning an identifiable good or service," a Section 2(a) claim fails. *Id.* (dismissing IUDTPA claim premised on concealment). Plaintiffs' IUDTPA claim, premised on an omission, fails to allege any misleading representation. To the extent the IUDTPA claims rests on a theory that Amazon's omission is fraudulent, Plaintiffs additionally fail to meet the particularity pleading standard of Rule 9(b). *See CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) (holding that IUDTPA claims sounding in fraud are subject to Rule 9(b)).

The requested disclosure remedy confirms the mismatch between the statute and Plaintiffs' theories. Plaintiffs ask for broad disclosures that outputs are AI-generated and that training data allegedly lacked consent. Compl. ¶ 204. But IUDTPA is not a general AI-labeling statute. Its source-confusion provisions address confusion about source, sponsorship, approval, affiliation, connection, or association. 815 ILCS 510/2(a)(2)-(3). Without an output that identifies or resembles a Plaintiff in a way likely to confuse listeners, there is no IUDTPA claim and no basis for injunctive relief.

## VII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Under Illinois law, unjust enrichment is not an independent tort; it depends on fraud, duress, undue influence, or other unlawful conduct. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019). When the predicate claims fail, unjust enrichment fails too. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741-42 (7th Cir. 2017).

Plaintiffs' unjust enrichment count rests on the same allegations as the statutory claims: Amazon allegedly used Plaintiffs' recordings, voiceprints, and identities without consent, avoided licensing costs, improved products, and competed with Plaintiffs. Compl. ¶¶ 207-12. Because Plaintiffs do not plausibly allege that Amazon used their recordings, because their BIPA and IRPA claims fail, and because their consumer-protection claims also fail, there is no independent unlawful conduct to support a claim of unjust enrichment. Thus, Count IX should be dismissed. *See Toulon*, 877 F.3d at 742.

Plaintiffs' unjust enrichment claims also illustrate why plausibility matters. Plaintiffs ask for disgorgement of value allegedly created by a vast voice-AI business, but they have not pleaded that any Amazon model used any Plaintiff's work or that any dollar of Amazon revenue from generative voice models is traceable to Plaintiffs or their identities. Restitution cannot be based on

an unpleaded benefit. The law does not permit a plaintiff to demand an accounting of a company's entire product line on the theory that discovery may reveal some use of the plaintiff's public recordings. This claim should be dismissed with the rest of the Complaint.

## CONCLUSION

The Court should dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim.

Dated: August 17, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Elizabeth B. Herrington*
Elizabeth B. Herrington
Zachary R. Lazar
Alborz Hassani
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
Facsimile: (312) 324-1001
beth.herrington@morganlewis.com
zachary.lazar@morganlewis.com
al.hassani@morganlewis.com

*Counsel for Defendant Amazon.com, Inc.*