**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP ROGERS, *et al.*, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | ) | Case No. 1:26-cv-05497<br><br>Honorable Jorge L. Alonso |

---

**DEFENDANT AMAZON.COM, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(2) AND 12(b)(6) MOTION TO DISMISS**

---

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. AMAZON IS NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN ILLINOIS. ..... 1

A. The Availability of Voice Products in Illinois Does Not Create Jurisdiction. ..... 1

B. Jurisdictional Discovery Is Unwarranted. ..... 4

II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT AMAZON USED ANY PLAINTIFF'S RECORDING. ..... 5

A. Plaintiffs Establish Access, Not Training Use. ..... 5

B. Amazon's Technical Materials Do Not Provide the Missing Link. ..... 6

C. Information-and-Belief Pleading Does Not Save Speculative Claims. ..... 8

III. PLAINTIFFS FAIL TO STATE ANY BIPA CLAIM. ..... 8

A. Plaintiffs Do Not Allege a BIPA Violation Occurring Primarily and Substantially in Illinois. ..... 8

B. Plaintiffs Plead Audio Processing, Not Voiceprints. ..... 10

C. The BIPA Counts Individually Fail. ..... 11

IV. PLAINTIFFS FAIL TO STATE AN IRPA CLAIM. ..... 12

V. PLAINTIFFS FAIL TO STATE AN ICFA CLAIM. ..... 13

A. Plaintiffs Do Not Plead an Actual, Plaintiff-Specific Pecuniary Loss. ..... 14

VI. PLAINTIFFS FAIL TO STATE AN IUDTPA CLAIM. ..... 14

VII. PLAINTIFFS FAIL TO STATE AN UNJUST-ENRICHMENT CLAIM. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) .......... 4, 8, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 8

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) .......... 4, 2, 5, 6

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) .......... 4, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 4, 15

*Curry v. Revolution Laboratories, LLC*,
949 F.3d 385 (7th Cir. 2020) .......... 4, 3

*Dames & Moore v. Baxter & Woodman, Inc.*,
21 F. Supp. 2d 817 (N.D. Ill. 1998) .......... 4, 7

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) .......... 4, 13, 14

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) .......... 4, 14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 4, 2

*G.T. v. Samsung Electronics America, Inc.*,
186 F.4th 470 (7th Cir. 2026) .......... 4, 11

*Gillam v. Abro Kalamazoo 3, Inc.*,
712 F. Supp. 3d 1079 (N.D. Ill. 2024) .......... 4, 4

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) .......... 4, 6

*Hazlitt v. Apple Inc.*,
543 F. Supp. 3d 643 (S.D. Ill. 2021) .......... 4, 11

*Horn v. Method Prods., PBC*,
2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ........................................................ 5, 12

*Illinois v. Hemi Group LLC*,
622 F.3d 754 (7th Cir. 2010) ........................................................................ 5, 3

*Intel Corp. Investment Policy Committee v. Sulyma*,
589 U.S. 178 (2020) ........................................................................................ 5, 13

*J.S.T. Corp. v. Foxconn Interconnect Technology Ltd.*,
965 F.3d 571 (7th Cir. 2020) ........................................................................ 5, 3

*Javid v. M.A.C. Cosmetics, Inc.*,
2026 WL 1601454 (N.D. Ill. June 4, 2026) ................................................... 5, 10, 11

*John Crane, Inc. v. Shein Law Ctr., Ltd.*,
891 F.3d 692 (7th Cir. 2018) ........................................................................ 5, 4

*Kahn v. Walmart Inc.*,
107 F.4th 585 (7th Cir. 2024) ....................................................................... 5, 13, 15

*Lynch Ford, Inc. v. Ford Motor Co.*,
957 F. Supp. 142 (N.D. Ill. 1997) ................................................................. 5, 14

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ........................................................................ 5, 8

*McClaine v. DX Enters., Inc.*,
2024 WL 3860971 (S.D. Ill. Aug. 19, 2024) .................................................. 5, 12

*McGoveran v. Amazon Web Services Inc.*,
175 F.4th 434 (3d Cir. 2026) ......................................................................... 5, 9, 10

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ................................................... 5, 10

*Mercis, B.V. v. Individuals Identified on Schedule A*,
2025 WL 540509 (N.D. Ill. Feb. 19, 2025) .................................................... 5, 15

*In re Mosaic LLM Litig.*,
2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ................................................ 5, 6

*Mutnick v. Clearview AI, Inc.*,
2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) .................................................. 5, 3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ........................................................................ 5, 8

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) .................... 6, 13, 14

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................... 6, 9, 10

*Rodriguez v. ByteDance, Inc.*,
2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) .................... 6, 12

*Speakers of Sport, Inc. v. ProServ, Inc.*,
178 F.3d 862 (7th Cir. 1999) .................... 6, 13

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) .................... 6, 6

*Svoboda v. Amazon.com, Inc.*,
168 F.4th 956 (7th Cir. 2026) .................... 6, 9

*Tri-Plex Tech Servs., Ltd. v. Jon-Don, LLC*,
2024 IL 129183 .................... 6, 14

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) .................... 6, 11

*Vanegas v. Signet Builders, Inc.*,
113 F.4th 718 (7th Cir. 2024) .................... 6, 3

*Walden v. Fiore*,
571 U.S. 277 (2014) .................... 6, 4

**Statutes**

740 ILCS 14/15 .................... 6

740 ILCS 14/15(b) .................... 11

740 ILCS 14/15(c) .................... 11

BIPA-regulated act .................... 10

**Other Authorities**

Fed. R. Civ. P. 8 .................... 6, 8

Fed. R. Civ. P. 12(b)(2) .................... 6, 1, 2

Fed. R. Civ. P. 12(b)(6) .................... 6, 1, 2

Fed. R. Civ. P. 15 .................... *passim*

## INTRODUCTION

Plaintiffs' Opposition does not overcome Amazon's arguments for dismissal pursuant to Rule 12(b)(2) and, in the alternative, Rule 12(b)(6).

***First,*** Plaintiffs do not dispute the critical jurisdictional fact that the alleged collection, extraction, training, and storage occurred—if at all—outside Illinois. The Opposition instead points to the global availability of downstream voice-synthesis services, but Plaintiffs simply cannot establish jurisdiction over Amazon based on conduct that allegedly occurred elsewhere.

***Second,*** Plaintiffs cannot bridge the gap between Amazon's lawful possession of certain Plaintiffs' recordings for permitted commercial distribution and their speculative allegation that Amazon used those recordings to train artificial intelligence. Possession is not training, and the Opposition identifies no facts plausibly connecting the two.

***Third***, Plaintiffs neither overcome BIPA's extraterritorial limitations nor cure their failure to plausibly allege that Amazon collected or used a "voiceprint" within the meaning of BIPA. Instead, the Opposition conflates distinct conduct, technologies, and data in an effort to manufacture factual disputes that the Complaint itself does not plausibly allege.

***Finally,*** Plaintiffs' non-BIPA claims fare no better. Plaintiffs still cannot identify a single AI-generated output that resembles any Plaintiff, nor one plausibly derived from Plaintiffs' recordings, and their claims independently fail for the additional claim-specific reasons set forth below.

## ARGUMENT

### I. AMAZON IS NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN ILLINOIS.

#### A. The Availability of Voice Products in Illinois Does Not Create Jurisdiction.

Amazon submitted declarations establishing that the ***at-issue conduct*** of data collection and model training occurs outside of Illinois, that relevant data is not stored in Illinois, and the

infrastructure supporting generative voice models is located outside of Illinois. *See* Wood Decl. ¶¶ 5-7; Levine Decl. ¶¶ 4-7.[1] Plaintiffs do not dispute this. *See* Opp. at 4-6.

That should end the jurisdictional inquiry. Specific jurisdiction requires a connection between Amazon's Illinois-directed conduct and the conduct giving rise to Plaintiffs' claims. Plaintiffs identify none. The alleged collection, use, and training did not occur in Illinois. Amazon therefore did not purposefully direct the allegedly unlawful conduct at Illinois. *See Brantley v. Prisma Labs, Inc.,* 2024 WL 3673727, at *6 (N.D. Ill. Aug. 6, 2024).

Plaintiffs instead rely on Amazon's nationwide availability of products allegedly derived from that out-of-state conduct and an overbroad reading of *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021); Opp. at 4-6. But *Ford* emphasized that a plaintiff's claims must at least "relate to the defendant's contacts" with the forum—and cautioned that this requirement has "real limits" and "does not mean anything goes." *Id.* at 362. There, the necessary relationship existed because the plaintiffs' product-liability claims concerned allegedly defective vehicles of the same models that Ford systematically marketed, sold, and serviced in the forum States. Id. at 365–68. The forum contacts thus related directly to the alleged product defect and resulting injuries.

Not so here. Plaintiffs identify no Illinois conduct by Amazon involving a Plaintiff's recording, the creation or storage of any voiceprint, or any output resembling a Plaintiff. The alleged wrong is an antecedent taking: Amazon supposedly acquired recordings and extracted identifying data while building models outside Illinois. The alleged Illinois transactions involve downstream, nationally available speech-generation services. Plaintiffs' theory would permit specific jurisdiction without at-issue conduct purposefully targeted at the forum. That is the "loose and spurious form of

[1] The Wood and Levine declarations are offered in support of Amazon's Rule 12(b)(2) arguments. Amazon's Rule 12(b)(6) arguments do not rely on those declarations. They rest on the Complaint, its missing factual links, and materials Plaintiffs incorporated into or made central to the pleading.

general jurisdiction" due process forbids. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 723 (7th Cir. 2024).

Plaintiffs' reliance on cases involving the direct sale of Illinois residents' biometric information only underscores the distinction. *See Mutnick v. Clearview AI, Inc.*, 2020 WL 4676667, at *2-4 (N.D. Ill. Aug. 12, 2020). Plaintiffs concede "Amazon sells synthesis rather than database access." Opp. at 7. That difference is dispositive. Clearview allegedly sold direct access to biometric data. By contrast, Amazon sells services that were purportedly trained on Plaintiffs' recordings; those services do not convey Plaintiffs' biometric information, embeddings, or other identifying information to users. Selling data is suit-related conduct in Illinois; Amazon's conduct is not.

Plaintiffs fail to meaningfully distinguish *J.S.T. Corp. v. Foxconn Interconnect Technology Ltd.*, which defeats their downstream-monetization theory. 965 F.3d 571 (7th Cir. 2020). In *J.S.T.*, the claim arose from the out-of-state use of trade secrets, but the downstream sale of products allegedly incorporating those trade secrets could not create jurisdiction. *Id.* Plaintiffs note the sales in *J.S.T.* were made through a third party (Opp. at 7), but the directness of the seller would only be material if Amazon sold Plaintiffs' voiceprints in Illinois; *J.S.T.* holds that the sale of a derivative product does not sufficiently relate to the challenged out-of-state conduct to support jurisdiction where the tort "is not intrinsically linked to interactions with a consumer." *J.S.T.*, 965 F.3d at 576.

Nor do *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020) and *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), help Plaintiffs. *See* Opp. at 4-5, 7. In those cases, the defendants' forum transactions themselves constituted or completed the asserted wrong. Here, use of the Voice Products in Illinois is not the challenged extraction under Section 15(b), possession without a retention policy under Section 15(a), or any other asserted wrong. And an unidentified generated response is not a public use, replica, or confusing representation under IRPA, ICFA, or IUDTPA.

The claim-specific allegations (Opp. at 6-7) confirm the jurisdictional defect. Counts I and II concern collection and possession. Any collection occurred when Amazon supposedly ingested a recording and extracted a voiceprint; Plaintiffs do not place that event in Illinois. They identify no Illinois storage, possession, retention decision, or destruction practice. Count III concerns transactions of biometric data. Sales of generated speech fall outside Section 15(c) (as explained further below). Count IV alleges transfers among affiliates, vendors, subprocessors, and integration partners, but Plaintiffs identify no Illinois recipient, transfer, or disclosure of Plaintiff-specific information. Count V identifies no Illinois security decision, storage practice, transmission protocol, or safeguard failure.

The non-BIPA claims (Opp. at 7-8) fare no better. Plaintiffs identify no Illinois advertisement, offering, or output that uses or imitates a Plaintiff's identity; no deceptive communication made to any Plaintiff in Illinois; no Plaintiff-specific output likely to cause confusion here; and no benefit obtained from a transaction involving a Plaintiff in Illinois. General Illinois commerce cannot create claim-specific jurisdiction. *See Gillam v. Abro Kalamazoo 3, Inc.*, 712 F. Supp. 3d 1079, 1084 (N.D. Ill. 2024). And Illinois's interest in protecting residents cannot cure the absence of minimum contacts. *Walden v. Fiore*, 571 U.S. 277, 284-91 (2014).

**B. Jurisdictional Discovery Is Unwarranted.**

Plaintiffs alternatively seek discovery concerning narrator agreements, catalog custody, payments, acquisition records, the declarations' historical scope, and the operation of Illinois services. Opp. at 8. None of those topics would resolve the jurisdictional dispute. Discovery is unwarranted because no disputed fact could establish jurisdiction in Plaintiffs' favor. *See John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018) (affirming denial of jurisdictional discovery where discovery would not establish jurisdiction).

No material factual dispute requires discovery. Plaintiffs rely on the availability of Amazon's Voice Products to Illinois customers; Amazon does not dispute that availability, only Plaintiffs'

contention that it creates specific jurisdiction. Conversely, Amazon's declarations set forth that no extraction, training, or storage occurs in Illinois, and that no relevant servers or employees are in Illinois. Plaintiffs do not dispute the accuracy of Amazon's declarations. Opp. at 5-6. The dispute is therefore legal, not factual: whether the downstream availability of Amazon's Voice Products in Illinois creates specific jurisdiction. Discovery into narrator contracts, payments, catalog records, or the mechanic of Illinois product availability cannot answer that legal question.

*Brantley* is particularly instructive. There, the plaintiff relied on Illinois residence, Illinois uploads, national product availability, and the possible incorporation of the plaintiff's photographs into AI training. 2024 WL 3673727, at *6-8. The same result — dismissal — follows here. Plaintiffs identify no discovery that could connect the alleged extraction, training, storage, or other Plaintiff-specific conduct to Illinois. Their request for jurisdictional discovery should therefore be denied.

## II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT AMAZON USED ANY PLAINTIFF'S RECORDING.

Every count of the Complaint depends on the speculative proposition that Amazon trained Voice Products on Plaintiffs' recordings. The Opposition does not make that plausible. Opp. at 8-11.

### A. Plaintiffs Establish Access, Not Training Use.

Amazon's alleged possession of certain Plaintiffs' podcasts and audiobooks for ordinary commercial distribution (Opp. at 9-10) does not make their use as AI training data more plausible.[2] Whether Amazon could obtain a file from its own services or a third-party source changes only the hypothesized path of access. It does not show that Amazon selected the file, placed it in a training corpus, processed it in an identified model, or retained a Plaintiff-specific representation.

Plaintiffs ***concede*** that "catalog access alone" is not training use. Opp. at 10. Yet the Complaint adds no factual bridge. It offers no plausible allegation that Amazon trained voice models

[2] Rogers and Marin identify no such direct possession by Amazon.

on these catalogs generally, much less that the models were trained on Plaintiffs' recordings specifically. The allegation that Dorcus's and Nassif's recordings "became the training material" for Amazon, Compl. ¶¶ 103, 109, is a conclusion Plaintiffs must support, not a supporting fact.

Plaintiffs argue that their recordings would be suitable for AI training as professional-quality, long-form, single-speaker recordings that predate training. Opp. at 9-10. But the asserted characteristics describe an enormous universe of recorded audio and do not make inclusion of any named Plaintiff's recording probable. *Brantley* is directly instructive: a prolific online presence, a massive public dataset, and alleged model training on that dataset established possible inclusion, not actual use of the plaintiff's data. 2024 WL 3673727, at *5-6. Access may shorten the hypothetical route by which Amazon could obtain a recording, but it does not mean Amazon used it for training. *Strautins v. Trustwave Holdings, Inc.* likewise rejected the assumption that access to a large universe of data meant the plaintiff's information was misused. 27 F. Supp. 3d 871, 880-81 (N.D. Ill. 2014).

Cases addressing AI training reinforce this. Opp. at 11. Claims survive when allegations connect identified works to identified datasets or development-stage copying; naming models, broad data categories, and the scale of training is insufficient. *See In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 914 (N.D. Cal. 2025); *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *2-3 (N.D. Cal. Aug. 19, 2025). Plaintiffs identify no comparable link here.

**B. Amazon's Technical Materials Do Not Provide the Missing Link.**

Plaintiffs' reliance on the BASE TTS technical paper (Opp. at 10, 15-16) does not move their allegations from speculation to plausible. The paper does not identify any Plaintiff, Audible title, Amazon Music podcast, or commercial catalog. And general references to "licensed," "proprietary," and "publicly available" data for other products do not establish a shared corpus across the nine Voice Products or connect Amazon's distribution catalogs to foundational-model training. Plaintiffs lack the essential link between possession of recordings for distribution and alleged use for model training.

Nor does BASE TTS's 200-hour cap support Plaintiffs' inference that Amazon selected "deep catalogs" of professional speakers. Opp. at 10. The paper describes a ceiling on English-language speech from an individual speaker, with excess data discarded. Opp. Ex., 1, Dkt. No. 32-2, at 7. A maximum is not a source-selection criterion. The paper also does not support Plaintiffs' inference that the training created any voiceprints from the selected audio, let alone that any purported voiceprint remains encoded and retrievable in final model parameters. Instead, it describes how the training process extracted speechcodes designed to disentangle speaker identity, using an extractor to collect "non-specific features that cannot be used for identification." *Id.* at 4. The model was used to synthesize ten voices, conditioned on separate reference encodings not extracted during training. *Id.* Where allegations are inconsistent with the terms of a written document incorporated into the Complaint "the inconsistent allegations are not accepted as true." *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998).

Plaintiffs ultimately concede the broader defect in their theory: they "do not assume that every Voice Product shares" the BASE TTS architecture. Opp. at 15. That concession forecloses using a single research paper about BASE TTS to bootstrap undifferentiated allegations about Polly, Nova, Alexa, Audible AI Narration, ACX, KDP Virtual Voice, and other products challenged in the Complaint. A technical paper concerning one model cannot supply missing factual allegations about different products that Plaintiffs concede may operate differently.

The Audible announcement cited by Plaintiffs fares no better. It does not state that Audible used its existing narrator catalog to train foundational models, much less that it selected any Plaintiff's recording for that purpose. Indeed, Plaintiffs acknowledge that the announcement is "not proof that any Plaintiff's title has been translated." Opp. at 15 n. 10. The announcement therefore establishes

neither that Plaintiffs' recordings were used for training nor that any resulting Voice Product generated an output involving any Plaintiff. It cannot supply the factual link the Complaint lacks.

### C. Information-and-Belief Pleading Does Not Save Speculative Claims.

Only a plausible complaint may open the door to discovery. Plaintiffs cannot assume the foundational event—whether Amazon used their recordings at all—solely because Amazon would possess records confirming or disproving it. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011); Opp. at 4, 10. Plaintiffs' position inverts Rule 8. A plaintiff could identify any content a company *might* have accessed, allege training use, and obtain discovery because only the defendant could conclusively disprove it; this is the discovery-first pleading prohibited by *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 558-59 (2007). *See also McCauley v. City of Chicago*, 671 F.3d 611, 619-20 (7th Cir. 2011).

The Complaint's omissions are concrete: no dataset containing Plaintiffs' works; no model tied to an identified recording; no ingestion record; no statement that Audible or Amazon Music catalogs supplied training; no output resembling a Plaintiff; and no mechanism by which a Plaintiff can be identified from a final model. Speculation cannot substitute for plausible facts.

## III. PLAINTIFFS FAIL TO STATE ANY BIPA CLAIM.

The BIPA counts fail independently because Plaintiffs do not allege a violation occurring primarily and substantially in Illinois, do not plausibly allege extraction or possession of a Plaintiff-identifying voiceprint, and fail to plead the requirements of individual BIPA subsections.

### A. Plaintiffs Do Not Allege a BIPA Violation Occurring Primarily and Substantially in Illinois.

Plaintiffs concede that "BIPA reaches only violations occurring in Illinois." Opp. at 11. The Illinois nexus relies on Plaintiffs' conduct and the impact on Plaintiffs in the state—not any act by Amazon occurring "primarily and substantially" in Illinois. *See Avery v. State Farm Mut. Auto. Ins.*

*Co.*, 835 N.E.2d 801, 852-53 (Ill. 2005). Plaintiffs argue that *Avery* requires a totality analysis rather than a server-location rule (Opp. at 12-14), but a "totality" cannot establish territoriality when ***none*** of the regulated conduct is alleged to have occurred here.

That defect exists under every subsection. The alleged Section 15(b) event occurred, if at all, when Amazon supposedly ingested a recording and extracted a voiceprint. Plaintiffs acknowledge that "Illinois recording is not Illinois extraction"; the Complaint does not locate the processing here. Opp. at 12. Section 15(a) concerns possession and policy obligations, yet Plaintiffs identify no Illinois storage, possession, retention decision, or destruction practice. Section 15(d) concerns disclosure, but no Illinois recipient or transfer is alleged. Section 15(e) concerns storage and security, but no Illinois-related storage or security practice is identified. And Section 15(c) reaches Illinois sales only if those transactions are sales or profit transactions in Plaintiffs' biometric data, which they are not.

Plaintiffs' cited authorities underscore what is missing here. Opp. at 11-12 & n. 9. In *Svoboda*, class members physically used Amazon's Virtual Try-On feature in Illinois, and the feature used their cameras and allegedly captured facial geometry during the Illinois interaction. *Svoboda v. Amazon.com, Inc.*, 168 F.4th 956, 959-60 (7th Cir. 2026). Plaintiffs here did not submit recordings to an Amazon feature in Illinois. *Rivera v. Google Inc.* and the Clearview litigation likewise involved forum uploads, collection interactions, or direct commercialization of a biometric database. They do not hold that source-media origin, omitted notice, and sale of a derivative product relocate out-of-state processing into Illinois. *See Rivera*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017).

*McGoveran v. Amazon Web Services Inc.* confirms that the relevant inquiry is the location of the regulated processing, not merely the location of the person whose information allegedly entered the system. 175 F.4th 434, 441-42 (3d Cir. 2026). There, Illinois residents' calls originated in Illinois, but the relevant authentication, processing, access, and storage occurred elsewhere. The same

distinction controls here: even assuming Plaintiffs created or recorded content while in Illinois, that does not locate Amazon's alleged extraction, possession, disclosure, or storage in Illinois.

Nor can Plaintiffs manufacture an Illinois violation from Amazon's alleged failure to obtain consent here. As another decision in *McGoveran* recognized, an omission cannot itself supply the territorial event because a court cannot assign a location to an event that never occurred—and treating the absence of consent as the Illinois conduct assumes the very statutory obligation Plaintiffs must first establish. *See McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021). Plaintiffs identify no BIPA-regulated act occurring primarily and substantially in Illinois.

**B. Plaintiffs Plead Audio Processing, Not Voiceprints.**

A voiceprint is an identifying representation derived from a voice; recording or processing audio without generating an identifier does not violate BIPA. *McGoveran*, 2021 WL 4502089, at *4; *Rivera*, 238 F. Supp. 3d at 1096-97. A synthesis system may process vocal characteristics without creating a persistent Plaintiff-specific identifier. *See Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022). Plaintiffs' response that Amazon allegedly combines multiple speech characteristics (Opp. at 16) does not plausibly allege the creation of an identifying voiceprint.

The BASE TTS paper relied on by Plaintiffs does not supply the missing mechanism. It describes speaker-identity disentanglement, non-specific features that are not usable for identification, and reference conditioning. A representation used to control how generated speech sounds is not plausibly an indexed biometric template capable of identifying a speaker.

Plaintiffs' metadata theory does not bridge that gap. Opp. at 16-17. Metadata may exist in a source recording. It does not follow that the output remains linked to the metadata after training. *Javid v. M.A.C. Cosmetics, Inc.*, 2026 WL 1601454, at *5-6 (N.D. Ill. June 4, 2026), involved a mechanism pairing measurements with customer information. Plaintiffs allege no comparable mechanism here.

That Amazon Connect Voice ID and Chime SDK are designed to identify or authenticate human speakers who sign up for those services is beside the point; those products are not at issue. Their capabilities have no bearing on the capabilities of the Voice Products.

Finally, *G.T. v. Samsung Electronics America, Inc.* requires control over biometric data itself, not merely control over software capable of processing source media. 186 F.4th 470, 477-78 (7th Cir. 2026). Plaintiffs' allegation that Amazon controls its training systems (Opp. at 17-18) does not answer whether a Plaintiff-specific biometric identifier ever existed in those systems.

### C. The BIPA Counts Individually Fail.

Plaintiffs' claim-specific arguments (Opp. at 17-20) fall short. Count I (Section 15(b)) requires a plausible allegation that Amazon collected, captured, purchased, or otherwise obtained Plaintiffs' biometric identifiers or biometric information. 740 ILCS 14/15(b). Count II (Section 15(a)) presupposes possession of biometric data. Plaintiffs do not plausibly allege use of any Plaintiff's recording, extraction of a voiceprint, an Illinois collection event, or possession of biometric data.

Count III (Section 15(c)) prohibits selling, leasing, trading, or otherwise profiting from biometric data. 740 ILCS 14/15(c). Read in context, "otherwise profit from" concerns transactions involving ***access to biometric information***, not products allegedly improved through historical use of biometric data. *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1306-09 (W.D. Wash. 2021); *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021). Plaintiffs' comparison cases involved services whose operation required querying biometric records, which is not how the Voice Products operate. The vague allegation that outputs retain Plaintiffs' voiceprints is nonsensical (Opp. at 19), as it suggests generated speech from the Voice Products reveals the identity of speakers who contributed to any model or training. The Complaint identifies no output resembling a Plaintiff and contains no allegation that a voiceprint could be isolated or extracted from any Voice Product's generated output.

Count IV (Section 15(d)) alleges that model parameters were transmitted among Amazon affiliates. Compl. ¶¶ 74-79, 168. But the Complaint does not plead facts plausibly showing that any Plaintiff's recording was used, that training created an identifying voiceprint, that a particular recipient received a voiceprint rather than API access or outputs, or that any transfer disclosed Plaintiff-specific data. Plaintiffs' allegation that services "necessarily" transfer parameters is a speculative conclusion, and naming *possible* recipients is not enough under Section 15(d). *See Horn v. Method Prods., PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022).

As to Count V, Section 15(e) requires facts showing that Amazon failed to use reasonable care or protected biometric data less carefully than other confidential information. Plaintiffs identify security controls Amazon uses for voiceprints in other contexts and then allege on "information and belief" that the same safeguards are not used here. Compl. ¶¶ 78, 175-78. Merely listing controls Plaintiffs believe Amazon should use and asserting their absence is a statutory conclusion, not a well-pleaded claim. *See McClaine v. DX Enters., Inc.*, 2024 WL 3860971, at *4 (S.D. Ill. Aug. 19, 2024). *Rodriguez* is inapposite, as it required pleading specific practices. *Rodriguez v. ByteDance, Inc.*, 2025 WL 2495865, at *11 (N.D. Ill. Aug. 29, 2025).

## IV. PLAINTIFFS FAIL TO STATE AN IRPA CLAIM.

Plaintiffs concede that an IRPA Section 30(a) claim requires use that "identif[ies] the particular Plaintiff to an ordinary, reasonable listener." Opp. at 22. Plaintiffs' Opposition then pivots to rely on a press release for a beta Audible feature that allows publishers to create audiobook translations that "preserves original narrators' voice." But no Plaintiff identifies any instance where a publisher translated his or her voice through this feature. Plaintiffs' allegations are disconnected from the feature on which the Section 30(a) claim now relies.

The Section 30(b) claim (Opp. at 23-24) fails because Plaintiffs identify no digital replica. A generalized allegation that generated speech "replicates or closely simulates the distinctive vocal

characteristics of Plaintiffs" (Compl. ¶ 188) does not suffice, as Plaintiffs do not and cannot identify even one specific output that replicates any Plaintiff, much less facts showing Amazon's knowledge of any specific replica. Plaintiffs' reliance on *Intel Corp. Investment Policy Committee v. Sulyma* does not erase that "actual knowledge" must be bound to a particular known fact. 589 U.S. 178, 184 (2020).

The Section 30(d) facilitation theory (Opp. at 24-25) fails for the same reason: Plaintiffs identify no underlying Section 30(b) violation, no particular customer distribution, and no facts showing Amazon continued to assist after acquiring actual knowledge of that violation.

## V. PLAINTIFFS FAIL TO STATE AN ICFA CLAIM.

Plaintiffs' Opposition recasts their ICFA claim as one based on "unfairness." Opp. at 25. But that theory still requires a consumer nexus. *See Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 848-50 (N.D. Ill. 2024). Plaintiffs sue as professional speakers, not as purchasers or users deceived in an Amazon transaction. Their asserted harms—e.g., lost licensing opportunities, reduced rates, and diverted engagements—are professional and competitor injuries. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999). Plaintiffs establish no consumer nexus here. *Kahn v. Walmart Inc.*, 107 F.4th 585, 601-03 (7th Cir. 2024).

Plaintiffs also cannot show Amazon's alleged conduct is contrary to public policy. Their invoked public policies derive from BIPA and IRPA (Opp. at 25-26) and assume that Amazon violated those statutes. As explained above, Plaintiffs adequately plead neither violation. The failed statutory claims cannot be repackaged as an ICFA unfairness claim. *See Ramirez*, 729 F. Supp. 3d at 852 (dismissing ICFA claim where the antecedent privacy claim was not adequately pleaded).

Any deception theory independently fails. Plaintiffs rely on Amazon's alleged failure to provide notice, but ICFA does not permit recovery based on a communication a plaintiff never received. *See De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009). Plaintiffs ask the Court to distinguish *De Bouse* because Amazon allegedly "deliberate[ly] with[held]" notices required by law.

Opp. at 27. But that argument assumes Amazon had a legal obligation to provide notices. And Plaintiffs identify no authority permitting an ICFA deception claim based on an uncommunicated omission simply because another statute allegedly required disclosure. That exception would swallow *De Bouse* whenever a plaintiff paired ICFA with a notice-and-consent statute.

### A. Plaintiffs Do Not Plead an Actual, Plaintiff-Specific Pecuniary Loss.

The ICFA claims fails for the independent reason that Plaintiffs plead no actual pecuniary loss proximately caused by Amazon's challenged conduct. *See Tri-Plex Tech Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 26. Plaintiffs identify no lost engagement, reduced rate paid to a Plaintiff, failed licensing negotiation, or amount of diminished income. Their generalized harm allegations are conclusions untied to any transaction or opportunity. Compl. ¶ 198.

Nor can Plaintiffs substitute other asserted injuries for the required pecuniary loss. Loss of control over biometric information is not a pecuniary injury. *See Ramirez*, 729 F. Supp. 3d at 850. And Amazon's alleged gain cannot measure Plaintiffs' damages because ICFA requires actual loss to the plaintiff. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 516-18 (7th Cir. 2023).

## VI. PLAINTIFFS FAIL TO STATE AN IUDTPA CLAIM.

Plaintiffs' IUDTPA theory fails at the outset because it remains premised on an omission. *See Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997). Plaintiffs confuse the issue by indicating the Voice Products output audio, but then rely again on the ***omission*** of a disclosure as to whether Plaintiffs authorized the output. Opp. at 28.

The Opposition does not cure the Complaint's failure to plead confusion or likely harm. Plaintiffs again rely solely on the beta Audible translation service (Opp. at 28), but do not and cannot identify a single audiobook recorded by any Plaintiff that was translated through this limited beta service. Plaintiffs rely on a case that undermines their position, as they fail to "plead allegations that

make it plausible that such likelihood of confusion exists." *Mercis, B.V. v. Individuals Identified on Schedule A*, 2025 WL 540509, at *5 (N.D. Ill. Feb. 19, 2025).

Plaintiffs also do not plead imminent injury necessary for prospective relief. Opp. at 29. The availability of Amazon's products does not make it imminent that a third party will generate an imitation of a particular Plaintiff, publicly distribute it, cause a listener to encounter it, and induce misattribution. That attenuated chain, dependent on third-party conduct, is too speculative. *See Kahn*, 107 F.4th at 606; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

## VII. PLAINTIFFS FAIL TO STATE AN UNJUST-ENRICHMENT CLAIM.

Plaintiffs' Opposition expressly grounds Count IX in the alleged BIPA and IRPA violations. Opp. at 29; Compl. ¶ 210. Because those predicates fail, Count IX fails too.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed. Plaintiffs' request for leave should also be denied because the Opposition does not identify an additional fact they could plead, attach a proposed amendment, explain how they could connect a Plaintiff to a particular dataset or model, identify an Illinois collection event, or identify a Plaintiff-specific output. The 98-page Complaint's defect is not lack of explanation; it is the absence of the essential factual links.[3]

[3] At minimum, the Court should require a Rule 15 motion with a proposed amended complaint supplying a non-speculative Plaintiff-specific link, not merits discovery as a substitute for pleading one.

Dated: October 12, 2026

*/s/ Elizabeth B. Herrington*
Elizabeth B. Herrington
beth.herrington@morganlewis.com
Zachary R. Lazar
zachary.lazar@morganlewis.com
Alborz Hassani
al.hassani@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
312.324.1000 (phone)
312.324.1001 (fax)

*Attorneys for Defendant Amazon.com, Inc.*